**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CARL KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-0050-D** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Carl King brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record, and the parties have briefed their positions.[1] For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

## PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on June 9, 2011, alleging disability due to shoulder problems, grand mal seizures, broken left kneecap, and broken right foot, and a disability onset date of May 26, 2011. R. 108-09, 144-46, 155. Following denial of his application initially and on reconsideration, Plaintiff attended a hearing before an Administrative Law Judge ("ALJ"), where both a medical expert ("ME") and vocational expert ("VE") testified. R. 24-46, 51-55, 57-59. The ALJ issued an unfavorable decision on September 5, 2013. R. 11-19. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-4; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 26, 2011, the alleged onset date. R. 13; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of "osteoarthrosis of left knee and rotator cuff syndrome of bilateral shoulders." R. 13-14; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments.  R. 14-17; *see* 20 C.F.R. § 404.1520(a)(4)(iv).  The ALJ found that Plaintiff had the RFC to "lift and carry 20 pounds occasionally and 10 pounds frequently" subject to the additional limitations that: Plaintiff "can sit 6 hours total in an 8-hour day and stand 6 hours total in an 8-hour day[;] occasionally can climb ladders, ropes, scaffolds, stairs, ramps and occasionally [can] balance, stoop, [kneel], crouch and crawl."  R. 14 (finding that Plaintiff could "perform a wide range of light work"); *see* 20 C.F.R. § 404.1567(b) (defining "light work").  At step four, the ALJ found that Plaintiff was unable to perform past relevant work and that transferability of job skills was not a material issue.  R. 17; *see* 20 C.F.R. § 404.1565, .1568.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform.  Taking into consideration the testimony of  the VE regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as Final Inspector, Counter Clerk, and School Bus Monitor, all of which offer jobs that exist in significant numbers in the national economy.  R. 17-18; *see* 20 C.F.R. § 404.1545(a)(5)(ii).  On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 26, 2011, through the date of the decision.  R. 18-19; *see* 20 C.F.R. § 404.1520(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff sets forth four allegations of error: (1) the RFC fails to provide for all of Plaintiff's impairments; (2) the ALJ failed to properly consider Plaintiff's medical conditions that were not severe impairments; (3) the ALJ failed to identify the weights

assigned to Plaintiff's treating physicians; and (4) the ALJ failed to make a proper credibility finding. Pl.'s Br. (Doc. No. 12) at 6-20. These will be considered in turn.

A. *RFC Analysis*

Plaintiff's first argument is that the ALJ failed to include in the RFC all of the limitations found by the ME, Dr. Laing, and testified to at the hearing. Pl.'s Br. at 6-7; *see* R. 29-37. In the written decision, the ALJ discussed Dr. Laing's testimony and stated that she gave "great weight" to Dr. Laing's opinion. R. 13-14. Plaintiff contends that it was error for the ALJ to give great weight to the ME's opinion, but then fail to include limitations found by the ME, without providing an explanation for that omission. Pl.'s Br. at 6-7 (citing R. 17). Specifically, Plaintiff points to the ME's statement at the administrative hearing that Plaintiff would have "limitations regarding the use of his arms and a limitation to overhead reaching, which I would put at occasional." R. 32. Plaintiff also challenges the RFC's lack of a limitation on overhead reaching on the ground that such a limitation is required due to the ALJ's determination that Plaintiff has the severe impairment of "rotator cuff syndrome of bilateral shoulders." Pl.'s Br. at 7-8 (citing R. 13); *see* 20 C.F.R. § 404.1520(c) (defining "severe impairment" as "impairment or combination of impairments [that] significantly limits [the claimant's] physical or mental ability to do basic work activities").

An ALJ generally may request and consider opinions from an ME "on the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(e)(2)(iii). An ME is "an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion." *Richardson v. Perales*, 402 U.S. 389, 396

(1971). The ME serves as "a neutral adviser," "used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." *Id.* at 408. The ALJ is required to evaluate an ME's opinions, including those regarding a claimant's RFC, in the same manner the ALJ would evaluate other medical opinions, and therefore the ME's nonexamining opinion generally (but not invariably) is given less weight than opinions of treating or examining sources. 20 C.F.R. § 404.1527(e)(2)(iii); *see id.* § 404.1527(a)-(d); SSR 96-6p, 1996 WL 374180, at *2-3, *4 (July 2, 1996); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

The undersigned assumes that the ALJ erred by excluding from the RFC, without explanation, an occasional limitation on Plaintiff's ability to reach overhead. An RFC assessment is a determination "of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Having found that Plaintiff was subject to "severe impairment(s)," including rotator cuff syndrome in both shoulders, that would "significantly limit[]" Plaintiff's ability to work, the ALJ was obligated to adequately address functional restrictions associated with those impairments. *See* R. 13-14; 20 C.F.R. § 404.1520(a)(4)(ii), (c), (e), (g). And an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Such error, however, would only be prejudicial if all of the occupations identified by the VE, and relied upon by the ALJ at step five as examples of jobs that Plaintiff can perform, would be precluded by the allegedly required limitation on overhead reaching.

*See Lara v. Colvin*, No. CIV-12-1249-L, 2014 WL 37746, at *1, *4 (W.D. Okla. Jan. 6, 2014) (holding that ALJ's failure to include limitation to relating with supervisors and peers on a superficial basis in RFC was harmless error where one of the occupations identified by the VE did not require interaction on more than a superficial basis); *cf. Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (holding that ALJ's failure to include all limitations from RFC in hypothetical question to VE was harmless when two of the four occupations identified by the VE were consistent with RFC); *Cochran v. Colvin*, No. CIV-13-1238-F, 2015 WL 1308381, at *7-8 (W.D. Okla. Mar. 23, 2015) (holding that ALJ's reliance on VE testimony regarding occupation that conflicted with claimant's RFC was harmless error when two remaining occupations did not conflict and provided substantial evidence supporting the ALJ's determination that suitable jobs existed in significant numbers). *See generally Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012) (indicating that harmless-error analysis may be appropriate where ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)).

Here, the VE identified three occupations that a hypothetical person subject to all of the limitations listed in Plaintiff's RFC would be able to perform: Final Inspector, Counter Clerk, and School Bus Monitor. *See* R. at 42-45. Examination of the *Dictionary of Occupational Titles* ("DOT") entries for these positions confirms that Final Inspector has a "Reaching" requirement of "Frequently." DOT 727.687-054 (Final Inspector), 1991 WL 679672 (4th rev. ed. 1991). Because adoption of the ME's limitation of

"occasional" reaching would preclude Plaintiff from working in this occupation, consideration of this occupation would not support a finding that the ALJ's assumed error was harmless.

The remaining two occupations testified to by the VE and relied upon by the ALJ, however, do not conflict with any limitation on overhead reaching by Plaintiff. The "Reaching" requirement for Counter Clerk is "Occasionally," and for School Bus Monitor, the "Reaching" requirement is "Not Present"—i.e., the "[a]ctivity or condition does not exist." *Id.* 249.366-010 (Counter Clerk), 1991 WL 672323; *id.* 372.667-042 (School Bus Monitor), 1991 WL 673102. The VE testified that these two occupations together offer 2400 jobs existing in Oklahoma and 266,000 jobs existing in the national economy. R. 44. Because these occupations alone would support the ALJ's step-five conclusion, reversal is not required even if it is assumed that the ALJ erred by not specifying a limitation of occasional reaching in the RFC. *See, e.g., Cochran*, 2015 WL 1308381, at *8 (finding, after disregarding one occupation cited by the ALJ, that a total of 2935 combined jobs in Oklahoma and 256,000 combined jobs in the national economy offered suitable jobs existing in significant numbers in the national economy); *Lara,* 2014 WL 37746, at *4 (finding that ALJ's error in relying on two occupations was harmless when third occupation did not conflict with omitted limitation and offered jobs existing in significant numbers in the national economy); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of the three jobs relied upon by the ALJ were erroneous, substantial evidence showed claimant could do the third job, which existed in significant numbers in the national economy).

*B. Other Impairments*

Plaintiff next argues that the ALJ erred in her consideration of evidence that Plaintiff suffered from the medically determinable impairments of seizures, headaches, and blackout spells. *See* Pl.'s Br. at 8-9. "An ALJ must 'consider the limiting effects of all a claimant's impairment(s), even those that are not severe, in determining RFC. 'While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.'" *McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (alterations omitted) (quoting 20 C.F.R. § 404.1545(e); SSR 96-8p, 1996 WL 374184, at *5).

Plaintiff's primary objection appears to be that the ALJ failed to expressly identify these conditions as nonsevere medically determinable impairments and consider their limiting effects. *See* Pl.'s Br. at 8-9; *McFerran*, 437 F. App'x at 638. Plaintiff does not, however, specifically establish that these conditions even qualified as "medically determinable impairments," such that they must be classified as severe or nonsevere and be addressed in the RFC determination. *See* Pl.'s Br. at 8-13; 20 C.F.R. §§ 404.1508, .1509 (defining "impairment" to include a one-year continuous duration requirement, among other criteria), .1521 (defining nonsevere impairments); SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's *medically determinable impairments or combination of impairments*, including the impact of any related symptoms." (emphasis added)). Further, assuming the seizures, headaches, and blackout spells constituted

medically determinable impairments, the ALJ specifically stated in the decision that she considered Plaintiff's impairments both singularly and in combination. *See, e.g.*, R. 14 (finding that Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals" a Listing (emphasis added)), 14-15 (stating that "all symptoms" and opinion evidence were considered in determining RFC); *cf.* R. 11, 13 (stating that "all the evidence" and "the entire record" were "careful[ly] consider[ed]"). *See generally* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware . . . when we assess your [RFC].").

When an "ALJ indicates he has considered all the evidence[,] our practice is to take the ALJ at his word." *Wall*, 561 F.3d at 1070 (alteration and internal quotation marks omitted).

Moreover, any step-two error does not necessarily require reversal of the unfavorable decision. Such an error is harmless if the ALJ continues past step two and, in evaluating the claimant's RFC and making consequent determinations at steps three, four, and five, considers the combined effect of all functional limitations caused by all of the claimant's impairments, whether severe or nonsevere. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Even assuming, then, that the ALJ failed to properly identify seizures, headaches, and blackout spells as nonsevere impairments, this shortcoming would only be prejudicial error if the ALJ also failed to consider limitations attributed to those conditions. That did

not occur.[2]  As discussed in detail below, the ALJ's determination of Plaintiff's RFC included proper consideration—and discussion—of Plaintiff's claims of blackout spells, seizures, and headaches; medical records related to such complaints; and consultants' evaluations of such complaints and the related medical records.  *See* R. 14-17 (citing Plaintiff's hearing testimony regarding blackout spells and headaches; Plaintiff's medical records regarding his history of seizure disorder, complaints of blackout spells, and headaches (Exs. 2F, 12F); the ME's testimony regarding Plaintiff's seizures and headaches; and State agency consultants' evaluations of a possible mental impairment due to allegations of blackouts (Exs. 4F, 8F)).  The ALJ also adequately considered whether any functional limitations were associated with these conditions.  *See* R. 14-17; 20 C.F.R. § 404.1545(a)(1)-(3), (e).

1.  The Record Evidence

Plaintiff contends that the ME's testimony regarding headaches, seizures, and blackout spells conflicted with the medical evidence of record.  Pl.'s Br. at 9, 10-11.  With respect to headaches, Plaintiff contests the ME's assertion that "[w]e just don't have a linear history where [headaches have] been something he's been seeing someone for on a regular basis."  Pl.'s Br. at 9 (citing R. 33).  The record reflects, however, that Plaintiff

---

[2] Plaintiff nominally argues that the ALJ improperly delegated to the ME the ALJ's duty to determine the nonsevere impairments.  *See* Pl.'s Br. at 8.  To obtain judicial review, it is insufficient to simply "suggest dissatisfaction" or merely mention an issue in the context of another matter.  *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).  Plaintiff's hint of an argument fails to develop a sufficient legal or factual basis for reversal, and the undersigned will not speculate or develop appellate arguments on his behalf.  *See id.*; *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

only began complaining of headaches on October 18, 2011, at which point he was referred to a neurologist. R. 328-33 (Oct. 18, 2011, complaint of headaches). Both prior to and after that date, the record reflects no complaints of headaches. R. 252 (May 5, 2010; no headaches or unusual dizziness, faintness or loss of consciousness), 315 (Aug. 2, 2011; no headaches or unusual dizziness, faintness or loss of consciousness), 257 (Oct. 28, 2011; no headaches or unusual dizziness, faintness or loss of consciousness), 341 (Dec. 28, 2011; no headache), 339 (Feb. 10, 2012; no headache), 326 (June 14, 2012; no headache, no dizziness, no memory loss), 332-33 (Dec. 19, 2012; no headache). Though Plaintiff argues that "Dr. Masih[] would kindly disagree with the ME since his repeated and multiple diagnoses included 'headache syndrome(s)' from 2011 to 2012," the record reflects that Plaintiff saw the neurologist, Ashish Masih, MD, initially on November 16, 2011, then again on December 28, 2011, and February 12, 2011. R. 346-48, 341-42, 339-40; *see* Pl.'s Br. at 9. At the initial visit, Plaintiff complained of headaches and blackout spells and was diagnosed with headache syndromes and seizure disorder. R. 346-48. At the two later visits, however, Plaintiff did not complain of headaches and, at the December 28, 2011 visit, Dr. Masih noted that "current medication [regime] is helping" the headaches. R. 339, 341-42.[3]

_____

[3] Plaintiff also argues that the ME improperly "den[ied] the radiologist's finding of migraine vasculopathy." Pl.'s Br. at 11. A careful reading of the December 21, 2011 MRI results, however, indicates that the radiologist did not diagnose Plaintiff with migraine vasculopathy. *See* R. 344. Instead, the radiologist noted "[m]ild to moderate white matter changes [that] are advanced for age" and "are most likely to be from advanced, chronic small vessel ischemic disease." R. 344. The radiologist offered migraine vasculopathy as one of the alternate possible causes. R. 344 ("They can also be seen with migraine vasculopathy, and less likely vasculitis/demyelinating disorders.").

With respect to seizures and blackout spells, the ALJ correctly cites a May 5, 2010 medical record indicating that Plaintiff's seizure disorder was stable. *See* R. 16, 254. This record also indicates that Plaintiff had not had any recent seizures, R. 252, as do other medical records and a seizure questionnaire completed by Plaintiff's wife. *See* R. 248 (June 25, 2009), 257 (Oct. 28, 2010), 265 (May 20, 2011), 328 (Oct. 18, 2011), 339 (Feb. 10, 2012), 326-27 (June 14, 2012), 332 (Dec. 19, 2012); R 162 (seizure questionnaire, July 1, 2011). The ALJ recognized that "the medical record reflected that [Plaintiff] ha[d] not had a seizure in years." R. 14, 16. Plaintiff complained of blackout spells at the December 28, 2011 visit with Dr. Masih. R. 341. At the February 10, 2012 visit, however, Plaintiff did not complain of blackout spells, and Dr. Masih noted that Plaintiff's seizure disorder was "well controlled." R. 339-40.

In light of the significant medical and nonmedical evidence consistent with the ME's opinion regarding headaches, seizures, and blackouts, the ALJ's decision to give great weight to the ME's testimony, and her conclusions regarding the lack of limiting effects of these conditions, are not "overwhelmed by other evidence in the record" and do not have "a mere scintilla of evidence supporting [them]." *Branum*, 385 F.3d at 1270.[4]

---

[4] Even if there had been conflict between the ME's testimony and the medical evidence from Dr. Masih, the ALJ was entitled to resolve it. *See Allman v. Colvin*, __F.3d__, No. 15-7026, 2016 WL 700566, at *5 (10th Cir. Feb. 23, 2016) (finding that ALJ is entitled to resolve any evidentiary conflict in the record); *cf. Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Concluding otherwise would require this Court to reweigh the evidence, a task it may not properly perform. *Allman*, 2016 WL 700566, at *5; *Bowman*, 511 F.3d at 1272.

2. <u>Specific Functional Limitations</u>

Plaintiff also argues that certain functional limitations related to Plaintiff's complaints of seizures should have been included in the RFC, citing as evidence the seizure precautions noted by Dr. Masih.  Pl.'s Br. at 11-13 (citing R. 348).  Dr. Masih's exam notes of November 16, 2011, conclude with the notation:

> I reviewed seizure precautions including: the need for constant supervision while in the bathtub or any other body of water, no climbing to high places where injury could occur with a fall, always wearing a helmet while bike riding, no driving or operating heavy machinery if patient has experienced seizures within the last six months. We discussed emergency seizure management and first aid.

R. 348.  Dr. Masih's exam notes of February 12, 2012, include a similar notation.  *See* R. 340.

The record reflects that Plaintiff had not "had a seizure in years."  R. 14.  Thus, Dr. Masih's seizure precautions, which by their terms applied only to any period in which Plaintiff had had a seizure within six months, imposed no functional limitation.  Further, as explained above, the ALJ's acceptance of the ME's opinion (i.e., that Plaintiff had an "old history" of seizures "but those have been controlled with medication") was supported by substantial evidence in the record.  Finally, any error in failing to address Dr. Masih's seizure precautions—i.e., "the need for constant supervision while in the bathtub or any other body of water," "no climbing to high places where injury could occur with a fall," "always wearing a helmet while bike riding," and "no driving or operating heavy machinery"—would be harmless because neither of the two occupations properly relied on by the ALJ at step five require immersion in water, climbing, bike

riding, or exposure to high places. *See* DOT 249.366-010 (Counter Clerk), 1991 WL 672323; *id.* 372.667-042 (School Bus Monitor), 1991 WL 673102. Because no reasonable factfinder could have found that Plaintiff is disabled at step five as a result of the inclusion of these precautions in the RFC, remand is not warranted. *See Keyes-Zachary*, 695 F.3d at 1162-63; *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Lara*, 2014 WL 37746, at *4.[5]

### C. Treating Physician Opinions

By regulation, a treating physician's medical opinion generally is given "more weight" than that of a nontreating source, provided certain conditions are met. 20 C.F.R. § 404.1527(c)(1)-(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Plaintiff contends that the ALJ erred by not properly evaluating the opinions of Plaintiff's treating physicians. Pl.'s Br. at 13-16.

Plaintiff names Drs. Masih, Hargrove, Sims, and Schnitz as his treating physicians. Pl.'s Br. at 13.[6] As a threshold matter, the record indicates that Plaintiff saw Kevin Hargrove, MD, several times between November 18, 2009, and April 12, 2010, for orthopedic treatment for his right shoulder. R. 214-232. The record also includes

---

[5] Although not actually listed as an element of the RFC, the limitation of "avoid[ing] concentrated exposure to unprotected heights" was included by the ALJ in her hypothetical to the VE, and the VE considered that limitation in testifying that Plaintiff could perform the occupations of Counter Clerk and School Bus Monitor. *See* R. 44-45. In similar circumstances, the Tenth Circuit has held that an "ALJ's failure to include the restriction as part of [her] written RFC determination was harmless." *See Seever v. Barnhart*, 188 F. App'x 747, 753 (10th Cir. 2006).

[6] Plaintiff also presents an argument in this section that "the radiologist opinion trumps the ME opinion." The ME's evaluation of the MRI, and its preliminary nature, was discussed above. *See supra* note 3.

medical records from 2009 through 2012 indicating that Plaintiff saw LaRhonda Sims, MD, numerous times as his primary physician. R. 233-67, 314-17, 322-31, 332-38. While it appears that Drs. Hargrove and Sims can be considered Plaintiff's treating physicians, the same may not be true for Drs. Schnitz and Masih. The record indicates that William Schnitz, MD, saw Plaintiff only twice over a period of four months and Dr. Masih saw Plaintiff only three times over a period of three months. R. 271-75, 339-51; *see Doyal*, 331 F.3d at 762-63 (discussing that the weight given a treating physician's opinion is due to "a relationship of both duration and frequency" and stating that "[a] physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source").

The Court need not decide whether Drs. Schnitz and Masih should be considered treating physicians, however, because Plaintiff has not established that they—or Drs. Hargrove and Sims—have offered any qualifying opinions that the ALJ did not properly address. A treating physician may offer an opinion that reflects a judgment about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite impairments, and any physical or mental restrictions. *See* 20 C.F.R. § 404.1527(a)(2); SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). But "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairments or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184, at *1; *see Bales v. Colvin*, 576 F. App'x 792,

798-99 (10th Cir. 2014). If opinions cited by the Plaintiff diagnose a condition but do not opine on the *functional limitations* imposed by the condition, then "the diagnoses by themselves are not significantly probative evidence the ALJ had to reject in order to find [the claimant] was not disabled, and therefore the ALJ did not need to discuss them." *See Fulton v. Colvin*, No. 15-6054, 2015 WL 6847808, at *2 (10th Cir. Nov. 9, 2015); *cf. Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[A]n ALJ is not required to discuss every piece of evidence [but] must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Here, as support for this argument, Plaintiff references only an exam note from Dr. Schnitz and no medical records from the other physicians. *See* Pl.'s Br. at 13 (citing R. 272). The cited exam note from Dr. Schnitz indicates that Plaintiff had normal ranges of motion throughout the musculoskeletal exam, except for Plaintiff's right big toe, and no pain except in his shoulders bilaterally and right big toe. *See* R. 272. Dr. Schnitz diagnosed Plaintiff with "rotator cuff syndrome;" "knee osteoarthrosis that seems mild to moderate in severity, worse on the left;" and "osteoarthrosis, localized, primary, involving toe." R. 272. Dr. Schnitz did not, however, record any associated limitations. *See* R. 271-75. Likewise, Plaintiff does not direct the Court to any restrictions or functional limitations set forth by any of the other physicians he names, but argues only (without citation to the record) that "the treating [doctors'] opinions included headaches, seizure precautions, black-outs and severe pain." Pl.'s Br. at 15.

The ALJ included rotator cuff syndrome and knee osteoarthrosis as severe impairments[7] and, as discussed elsewhere in this decision, properly considered Plaintiff's complaints of headaches, seizures, and blackouts. *See* R. 13. Because Plaintiff has failed to direct the Court to any opinions of functional limitations by Drs. Masih, Hargrove, Sims, and Schnitz that the ALJ should have considered but did not, and the ALJ considered the medical records of those physicians relating to Plaintiff's relevant impairments and other conditions, remand is not warranted on this basis.[8] *See, e.g., Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming when, despite improper consideration of the medical record, the ALJ had considered "pertinent evidence" and "plaintiff has not directed our attention to any medical evidence that was disregarded"); *cf. Bales*, 576 F. App'x at 799 (noting that where a claimant fails to identify how any allegedly ignored medical problems, "either individually or in combination, affected her functioning during the time she claims she was disabled," any failure by the ALJ to account for all medical problems "would be harmless" (citing *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment

---

[7] Plaintiff has not argued that osteoarthrosis of his toe should have been considered an impairment. Any such argument is waived. *See Murrell*, 43 F.3d at 1389 n.2.

[8] Plaintiff also has not attempted to show that functional limitations from the cited conditions would have conflicted with the occupations relied upon by the ALJ at step five. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (holding that failure to weigh a medical opinion may result in harmless error when plaintiff does not establish that limitations identified in those opinions conflicted with occupations relied upon for step-five conclusion of no disability).

of [RFC].”); 20 C.F.R. § 404.1512(c) (prescribing that claimant must provide evidence "that relates to whether or not [claimant is] . . . disabled"))); *see also Keyes-Zachary*, 695 F.3d at 1161-66 (finding ALJ's failure to weigh medical opinions harmless when they were not inconsistent with ALJ's eventual findings and noting "there [was] no reason to believe that a further analysis or weighing of this opinion could advance [plaintiff's] claim of disability").

### D. Credibility Determination

Plaintiff's final argument is that the ALJ's credibility determination is unsupported by substantial evidence, asserting that "the ALJ makes no proper credibility finding, but only uses boilerplate." Pl.'s Br. at 17. The assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of . . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *Wilson v. Astrue*, 602 F.3d 1136, 1144-45 (10th Cir. 2010). The ALJ is required to closely and affirmatively link her credibility findings to substantial evidence in the record and to include "specific reasons" for such findings. *See Wilson*, 602 F.3d at 1144 (internal quotation marks omitted); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); SSR 96-7p, 1996 WL 374186, at *4. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson*, 602 F.3d at 1144 (internal quotation marks omitted). Credibility findings must "be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288

F.3d 1248, 1254 (10th Cir. 2002) (internal quotation marks omitted).  In addition to

objective evidence, the ALJ should consider certain factors in evaluating a claimant's

credibility, including:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *accord* 20 C.F.R. § 404.1529(c)(3); *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).  An ALJ is not, however, required to

make a formalistic, factor-by-factor recitation of the evidence, but instead need only

"set[] forth the specific evidence [she] relies on in evaluating the claimant's credibility."

*Keyes-Zachary*, 695 F.3d at 1167 (internal quotation marks omitted).  Here the ALJ has

done so.

The ALJ acknowledged Plaintiff's claims of blackout spells, headaches, and pain.

R. 15-16.  The ALJ then found that Plaintiff's "medically determinable impairments

could reasonably be expected to cause some of the alleged symptoms," but found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms were "not entirely credible." R. 16. Plaintiff does not argue that there were any other claimed symptoms that should have been considered by the ALJ but were not, or that the ALJ overlooked specific evidence that conflicted with the reasons relied upon by the ALJ—his argument here is only a broad allegation that the ALJ did not include "specific reasons" for the credibility determination. *See* Pl.'s Br. at 17-20. Contrary to Plaintiff's assertions, however, the ALJ provided a thorough analysis, including specific reasons, for her determination that Plaintiff's statements were "not entirely credible." *See* R. 16-17.

With respect to Plaintiff's claims of blackout spells and seizures, the ALJ observed that medical evidence of record indicated that Plaintiff's seizure disorder "was noted to be stable," "well controlled," and that Plaintiff had "had no seizures in years." R. 16 (citing Exs. 2F, 12F). The ALJ also discussed the medications Plaintiff was taking for seizures and the ME's testimony that "the clinical history shows [Plaintiff's] seizure disorder to be controlled." R. 16 (citing Exs. 2F, 12F), 17.

Regarding Plaintiff's claims of headaches, the ALJ discussed the results of the MRI of Plaintiff's brain, noting the possible causes for the "mild to moderate white matter changes advanced for age." R. 16 (citing Ex. 12F). The ALJ then discussed the ME's testimony regarding those results, specifying that "with regard to headaches, [the ME] stated that this is by no means a definitive finding on MRI to support headaches.

[The ME] stated the medical record does not indicate a primary diagnosis of headache or migraine and he would not consider it a severe impairment." R. 17.

With respect to Plaintiff's claims of pain in his shoulders and knee, the ALJ noted that, after his December 2009 shoulder surgery, Plaintiff was "released to full duty without restriction." R. 16 (citing Ex. 1F). The ALJ discussed the results of the examination done by Dr. Schnitz, noting Plaintiff's ranges of motion and pain:

> [Plaintiff] had normal passive and active range of motion of the shoulders. Forward flexion and abduction were painful bilaterally with crepitus. The right knee had no pain or crepitus on flexion. The left knee had crepitus on flexion and an old healed surgical scar. Dr. Schnitz['s] diagnosis was rotator cuff syndrome and knee osteoarthritis which appears mild to moderate in severity, worse on the left.

R. 16 (citing Ex. 3F). The ALJ also discussed x-rays taken of Plaintiff's knees, noting that they

> showed no acute fracture or dislocation. Mild compartmental joint space narrowing and spurring mostly on the left patellofemoral compartment and both medial compartments. The overall impression was mild bilateral knee osteoarthritis, left greater than right.

R. 16 (citing Ex. 11F). Further, though the State agency medical consultants found that Plaintiff could perform medium work, the ALJ gave their opinions only "some weight," finding that the evidence received at the hearing indicated that Plaintiff "is somewhat more limited." R. 17 (citing Exs. 6F, 9F).

The ALJ then concluded that

> the medical records and medical expert testimony do not support the severity of debilitation described by [Plaintiff]. Certainly, the medical records are suggestive that it would be difficult for him to continue working at the rather strenuous work he has done in the past, [but] this does not mean that all work activity is precluded.

R. 17.

The ALJ's credibility discussion demonstrates that she appropriately evaluated the objective evidence and set forth several instances in which such evidence warranted a finding that Plaintiff had greater functioning than he claimed. *See* R. 16-17; *see also* 20 C.F.R. §§ 404.1529(c)(2) (evaluation of symptoms includes consideration of objective medical evidence), .1529(c)(3)(ii) (evaluation of symptoms includes consideration of frequency of symptoms), .1529(c)(3)(iv) (evaluation of symptoms includes consideration of effectiveness of medication), .1529(c)(4) (evaluation of symptoms includes consideration of inconsistencies, including inconsistencies with medical evidence). Plaintiff has not shown that the ALJ failed to provide "specific reasons" or a "'more thorough analysis' [than] just the boilerplate statement." *See* Pl.'s Br. at 17-18.

Finally, in challenging the ALJ's credibility assessment, Plaintiff raises several miscellaneous, undeveloped arguments. First, Plaintiff argues that the ALJ improperly failed to consider a Third Party Function Report completed by Plaintiff's mother-in-law. Plaintiff, however, has not presented any specific evidence provided therein that the ALJ failed to consider. *See* Pl.'s Br. at 19-20; R. 171-78. As noted above, the ALJ stated that she gave "careful consideration [to] all the evidence" and "careful consideration [to] the entire record." R. 11, 13, 14. When an ALJ states that he or she has considered all the evidence, a reviewing court generally must accept that statement as true. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). Further, the Tenth Circuit has explained that "[t]here is obviously no requirement that the ALJ reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Thus, while an ALJ must *consider* all

the evidence, he or she is not required to *discuss* each piece of evidence. *Clifton*, 79 F.3d at 1009-10; *accord Wall*, 561 F.3d at 1067.

Moreover, an ALJ need not discuss testimony that was corroborative or cumulative of other evidence that was discussed. *See, e.g.*, *Wilson*, 602 F.3d at 1148 (finding nothing to indicate that ALJ failed to properly consider therapy records when records were cumulative with respect to undisputed evidence); *Brescia v. Astrue*, 287 F. App'x 626, 630 (10th Cir. 2008) (finding no reversible error where ALJ did not discuss third party written statements that were "largely cumulative" of claimant's testimony and written statements). *But see Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (finding error where ALJ "made no mention" of wife's testimony that was uncontroverted and corroborated the medical evidence). Here, Plaintiff's mother-in-law's Third Party Function Report recounts Plaintiff's allegations of pain, his past surgery, and his seizures. R. 171-78. Her Report is similar to, but less detailed than, the Function Report completed by Plaintiff. *Compare* R. 171-78, *with* R. 163-70. Additionally, Plaintiff testified at the administrative hearing and offered his own report regarding these same topics, and so his mother-in-law's report was largely cumulative of Plaintiff's first-person testimony. *See* R. 37-42, 179-80. Because the Third Party Function Report was cumulative of Plaintiff's own statements, and because the ALJ's decision demonstrates that the ALJ considered the entire record, remand is not warranted on this basis.

Plaintiff further argues that the ALJ erred in not considering Plaintiff's work history. Pl.'s Br. at 19-20. As explained above, the undersigned accepts the ALJ's word

that she considered all of the evidence. Plaintiff's argument that his work history enhances his credibility and "goes against the ALJ's *de minim[i]s* finding" is an invitation to this Court to reweigh the evidence and substitute its judgment for that of the ALJ. *See* Pl.'s Br. at 20. This the Court may not do. *See, e.g.*, *Bowman,* 511 F.3d at 1272; *see also Stokes v. Astrue*, 274 F. App'x 675, 686 (10th Cir. 2008) (stating that when claimant claimed that ALJ's credibility determination was flawed because he gave her no credit for her work history, "[t]he only question this court must answer is whether the ALJ's determination that [claimant's] allegations of disabling pain were not credible was closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support the conclusion").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 22, 2016. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 8th day of March, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE